JED S. RAKOFF, U.S.D.J.
This dispute arises from a battle between a son and his mother from what appears to be a wealthy but dysfunctional family. But Fidelity, caught in the middle, was contractually obligated to adhere to the terms of its agreement with the family partnership, which it allegedly failed to do.
Before the Court is the motion of defendant Fidelity Brokerage Services LLC to dismiss the complaint of plaintiff Morris & Judith Family Partnership, LLC (the "LLC") and co-plaintiff Richard Lowinger, as co-Executor of the Estate of Morris Lowinger (the "Estate"). ECF No. 11. For the reasons stated herein, the Estate is dismissed as a plaintiff, but the motion to dismiss is otherwise denied.
Background
The LLC was formed on December 30, 2004. Complaint ¶ 11 ("Compl."), ECF No. 1, Ex. A. In the LLC's Operating Agreement, Morris and his wife Judith Lowinger are listed as "Members," their son Richard is listed as Secretary and Assistant Executive Manager, and Morris is also listed as Chief Executive Manager. ECF No. 13, Ex. A, at 2, 9. The Operating Agreement also lists an initial capital contribution from Morris and Judith of $7.8 million. Id. at 11. Judith did not sign the Operating Agreement.
On the same day that the LLC was formed, Morris opened a Fidelity brokerage account in the name of the LLC. Compl. ¶ 20. In opening the account, Morris provided Fidelity with a copy of the LLC Operating Agreement, and he also filled out and signed an "Account Application" and an "Account Agreement" on behalf of the LLC. Id. ¶ 21; ECF No. 1, Ex. A, at 20-25; id. at 27-29. Morris was the only person to sign the Account Application, and he was listed on it as the "primary authorized person." ECF No. 1, Ex. A, at 25. Morris was also the only person to sign the Account Agreement, and he was the only person listed - in Section 2 of the Account Agreement - as an "authorized individual." Id. at 27. In signing the Account Agreement, Morris agreed to the following terms propounded by Fidelity:
The undersigned jointly and severally agree that each of the persons named in this Section 2 shall have authority on behalf of the Partnership account to buy, sell, trade and otherwise deal in, through Fidelity Brokerage Services LLC ("you") as brokers, stocks, bonds, options and any other securities, listed or unlisted on margin or otherwise (including short sales); to receive on behalf of the Partnership account demands, notices, confirmations, reports, statements *245 of account, and communications of every kind; to receive on behalf of the Partnership account money, securities and property of every kind, and to dispose of same [;] to make on behalf of the Partnership account agreements relating to any of the foregoing matters and to terminate or modify same or waive any of the provisions thereof; and generally to deal with you on behalf of the Partnership account as fully and completely as if he alone were interested in said account, all without notice to the other or others interested in said account.
The undersigned further authorize you, in the event of death or retirement of any of the members of said Partnership[,] to take such proceedings, require such papers, retain such portion of or restrict transactions in said account as you may deem advisable to protect you against any liability, penalty or loss under any present or future law or otherwise. It is further agreed that in the event of the death or retirement of any member of the said Partnership, the remaining members will immediately cause you to be notified of such fact.
Id. at 29.
Morris died on April 28, 2014. Compl. ¶ 3. Judith informed Fidelity of Morris's death on September 12, 2014, and she thereafter demanded that the LLC's assets be transferred to her personal accounts. Id. ¶¶ 38-39. After initially refusing, Fidelity transferred the entire balance of the LLC account to Judith's personal accounts on November 12, 2014. Id. ¶¶ 40, 46. The balance at that time was roughly $12,000,000. Id. ¶ 41.
Plaintiffs now bring a one-count breach of contract complaint against Fidelity. They argue that the Account Agreement was a valid and enforceable contract, that plaintiffs performed their obligations under that contract, and that Fidelity breached the contract by permitting an unauthorized individual to transfer funds out of the account. Id. ¶¶ 48-50. Plaintiffs seek $12,000,000 in damages plus interest, as well as costs and expenses. Id. ¶¶ 51.
Fidelity moves to dismiss the complaint for failure to state a claim. See Notice of Motion to Dismiss the Complaint, ECF No. 11; Memorandum of Law in Support of Defendant's Motion to Dismiss ("MID"), ECF No. 12. While Fidelity does not challenge plaintiffs' contention that the Account Agreement is a valid and enforceable contract, Fidelity argues that it did not breach any contractual promise and, moreover, that neither plaintiff in the action is a proper plaintiff.
Analysis
I. Standard of Review
In order to survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When adjudicating a motion to dismiss, the Court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).
II. Plaintiffs Have Stated a Claim for Breach of Contract
The parties agree that the Account Agreement is governed by Massachusetts *246 law, under which a plaintiff must "describ[e], with 'substantial certainty,' the specific contractual promise the defendant failed to keep." Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007). Plaintiffs allege that Fidelity made a contractual promise not to transfer LLC assets to unauthorized individuals and that Fidelity breached this promise by transferring LLC assets to Judith. Compl. ¶ 50.
Fidelity responds with two arguments: First, Fidelity argues, the Account Agreement imposes no contractual obligation not to transfer assets to unauthorized individuals. MTD 11. Instead, it merely instructs customers to identify the individuals who are authorized to transact business. See id. at 11-12. If the Account Agreement were read the way plaintiffs propose, Fidelity argues, "nobody - not even Richard himself - would have been able to instruct Fidelity on the Account following Morris's death because Morris was the only authorized person under the Partnership Account Agreement that he filled out a decade earlier." Id. at 13.
Second, Fidelity argues, even if the Account Agreement did impose a contractual obligation, Fidelity did not breach it by following Judith's instructions because Judith was the LLC's sole surviving member. Id. at 8. In the September 12 letter in which Judith informed Fidelity of Morris's death, she also notified Fidelity that she was removing Richard as a manager. ECF No. 13, Ex. D. Fidelity argues that Judith's letter was presumptively valid because it bore the LLC's seal, and that "Fidelity did not breach any obligation to the [LLC] because it properly complied with the instruction of the only person authorized to instruct Fidelity on its behalf." MTD 9.
Starting with Fidelity's first argument, plaintiffs have plausibly alleged that Fidelity was contractually obligated not to distribute assets to unauthorized individuals. In signing the Account Agreement, Morris, on behalf of the LLC, agreed with Fidelity that Morris alone had authority "to receive on behalf of the Partnership account money, securities and property of every kind, and to dispose of same." ECF No. 1, Ex. A, at 29. By giving money from the account to someone other than Morris, it is plausible that Fidelity breached this agreement.
This conclusion is unchanged by Fidelity's concern that "nobody ... would have been able to instruct Fidelity on the Account following Morris's death." MTD 13. The Account Agreement explicitly contemplated such a scenario, and Morris authorized Fidelity, "in the event of death or retirement of any of the members of [the] Partnership[,] to take such proceedings, require such papers, retain such portion of or restrict transactions in [the] account as you may deem advisable to protect you against any liability, penalty or loss under any present or future law or otherwise." ECF No. 1, Ex. A, at 29. Presumably the LLC - through someone that the Operating Agreement vested with power to bind it - could have added an authorized individual to the account. And if Fidelity were unable to determine whom the Operating Agreement vested with power to bind the LLC, it could have "restrict[d] transactions in [the] account" pending judicial resolution of the matter. It is for just such situations, for example, that interpleader actions exist.
As to Fidelity's second argument, plaintiffs have plausibly alleged that Judith was not authorized to transact business on behalf of the LLC. Under paragraph 4.2 of the Operating Agreement, "Members that are not Managers shall take no part whatever in the control, management, direction, or operation of the Company's affairs and *247 shall have no power to bind the Company." ECF No. 13, Ex. A, at 5. Even assuming Judith was a member,[2] there is no dispute that she was not a manager.
Notwithstanding this straightforward result, Fidelity appears to argue that Judith must have been authorized to transact business on behalf of the LLC because Judith validly removed Richard as a manager, leaving no one else to wind up the LLC after Morris's death triggered its dissolution. MTD 8. The problem is that the Operating Agreement says managers "will serve in their capacities until they are removed for any reason by a majority vote of the Members as defined by ARTICLE 4." ECF No. 13, Ex. A, at 9. And paragraph 4.1 - the only part of Article 4 to which the prior sentence could refer - says that "a vote of the Members holding a majority of the capital interests in the Company, ... shall elect so many Managers as the Members determine." Id. at 5. (emphasis added). Even on Fidelity's view, Judith had at most a 50 percent capital interest in the LLC, meaning that she lacked authority to remove Richard as a manager.[3] As such, plaintiffs have plausibly alleged that Judith was not authorized to transact business on the LLC's behalf.
III. Richard Can Sue on Behalf of the LLC, but the Estate Is Not a Proper Plaintiff
Fidelity argues that Richard cannot sue on behalf of the LLC because Judith revoked his authority when she removed him as a manager. See MTD 16-17.[4] As discussed above, however, plaintiffs have plausibly alleged that Judith did not have authority to remove Richard. As such, Richard can sue on behalf of the LLC.
Fidelity also argues that the Estate is not a proper plaintiff because it is neither a party nor third-party beneficiary of the Account Agreement. MTD 17-18. Plaintiffs respond that the Account Agreement, which Morris signed, says that it "is binding on the undersigned and their legal representatives, successors, and assigns." ECF No. 1, Ex. A, at 29. Plaintiffs also respond that "[t]he Partnership Account was property of the [LLC], and the [LLC] was property of [Morris], and thus upon his death the Partnership Account became property of the Estate." Opp. 16.
Neither of plaintiffs' responses is persuasive. Under Delaware law, "[a] shareholder has no personal or individual *248 right of action against a third party for acts causing injury to a corporation," Cont'l Grp., Inc. v. Justice, 536 F.Supp. 658, 660 (D. Del. 1982), and "[t]he Delaware Legislature clearly intended to extend this maxim to limited liability companies," In re Opus E., L.L.C., 480 B.R. 561, 575 (Bankr. D. Del. 2012) (citing Del. Code Ann. tit. 6, § 18-701 ). The inability of members to sue third parties is further confirmed by section 18-1001 of the Delaware Limited Liability Company Act, which provides that LLC members or assignees may bring an action on behalf of an LLC only "if managers or members with authority to do so have refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed." Del. Code Ann. tit. 6, § 18-1001. Here the LLC has brought the action, so members and assignees may not do so.
The language in the Account Agreement regarding successors and assigns is not to the contrary, as that language deals only with certain obligations imposed on individual signatories, as opposed to rights appreciated by the entity that is party to the agreement. Similarly, while it is true that the Estate has an ownership interest in the LLC, and that the LLC has an ownership interest in the account, it is not true that the Estate has an ownership interest in the account, as Delaware law makes clear that "[a] member has no interest in specific limited liability company property." Del. Code Ann. tit. 6, § 18-701.
Conclusion
For the foregoing reasons, plaintiffs have plausibly alleged that Fidelity breached the Account Agreement, and Fidelity's motion to dismiss is hereby denied. However, the Estate has failed to demonstrate that it is a proper plaintiff to bring this action. Accordingly, the Estate is hereby dismissed as a party to this action.
SO ORDERED.

Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, footnotes, and citations are omitted.

Plaintiffs allege that Judith was not a member of the LLC at all. Compl. ¶ 17. However, Judith is clearly listed as a member in the Operating Agreement, ECF No. 13, Ex. A, at 2, and under Delaware law (which governs the LLC), an "LLC and its members are parties to and bound by the LLC agreement, regardless of whether they sign it," Seaport Vill. Ltd. v. Seaport Vill. Operating Co., LLC, C.A. No. 8841-VCL, 2014 WL 4782817, at *2 (Del. Ch. Sept. 24, 2014).

At oral argument, counsel for Fidelity suggested that Morris's interest should be excluded when calculating whether Judith held "a majority of the capital interests in the Company." Transcript dated November 14, 2018 at 2:24-3:12. This interpretation is difficult to square with the plain language of the Operating Agreement, and the Court declines to adopt it, at least at this preliminary stage of the litigation.

In its motion to dismiss, Fidelity also argued that the LLC could not bring suit because its certificate of formation had been canceled. MTD 15-16. As of the filing of plaintiffs' opposition to Fidelity's motion to dismiss, however, the LLC had been revived. See Memorandum of Law in Opposition to Motion to Dismiss 17 ("Opp."), ECF No. 16; ECF No. 15, Ex. F. Fidelity appears to agree that the LLC can now bring suit. Reply Memorandum of Law in Further Support of Defendant Fidelity Brokerage Services LLC's Motion to Dismiss 9 ("Reply"), ECF No. 19.